1  MICHAEL C. ZELLERS (S.B. #146904)
2  TUCKER ELLIS & WEST LLP
   515 South Flower Street
3  Forty-Second Floor
   Los Angeles, CA 90071-2223
4  Telephone: 213.430.3400
5  Facsimile: 213.430.3409

6  CHARLES C. LIFLAND (S.B. #108950)
   O'MELVENY & MYERS LLP
7  400 South Hope Street
   Los Angeles, CA  90071-2899
8  Telephone:   (213) 430-6000
   Facsimile:   (213) 430-6407
9
10 Attorneys For Defendants
   DEPUY ORTHOPAEDICS, INC.
11 and JOHNSON & JOHNSON

12

13             **UNITED STATES DISTRICT COURT**

14       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15

16 MAURICE BRIGHAM, individually      Case No.  3:10-cv-03886-SI
   and on behalf of all others similarly
17 situated,                          **[PROPOSED] ORDER**

18             Plaintiffs,

19      v.

20 DEPUY ORTHOPAEDICS, INC., an
   Indiana Corporation; JOHNSON &
21 JOHNSON SERVICES, INC., a New
   Jersey Corporation; and DOES 1-100,
22 inclusive,

23             Defendants.

24

25

26

27

28

## [PROPOSED] ORDER

Upon consideration of Plaintiff Maurice Brigham's *Ex Parte* Application for Temporary Restraining Order and for Order to Show Cause Re: Preliminary Injunction, brought before the Court on September 10, 2010, and for good cause shown,

IT IS HEREBY ORDERED:

1) Plaintiff's Application is DENIED.

2) At the hearing on September 10, 2010, the parties agreed to a stipulation and read the terms of that stipulation into the record as reflected in the hearing transcript attached hereto as Exhibit A at page 12, line 9, through page 15, line 1.

3) The Court hereby ORDERS the parties to comply with the terms of the stipulation as reflected in Exhibit A.

**IT IS SO ORDERED.**

Dated:  September 29 , 2010

_____
SUSAN ILLSTON
United States District Judge

# EXHIBIT A

Pages 1 - 16

United States District Court

Northern District of California

Before The Honorable Susan Illston

Maurice Brigham,                    )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )          No. C10-3886 SI
                                    )
DePuy Orthopaedics,                 )
Incorporated,                       )
                                    )
            Defendant.              )
_____)

San Francisco, California
Friday, September 10, 2010

### Reporter's Transcript Of Proceedings

**Appearances**:

For Plaintiff:          Lanier Law Firm, PC
                        2049 Century Park East, Suite 1940
                        Los Angeles, California  90067
                 By:    **Dana Bradley Taschner, Esquire**
                        **Lee Adam Cirsch, Esquire**

For Defendant:          Tucker Ellis & West, LLP
                        515 South Flower Street, 42nd Floor
                        Los Angeles, California  90071
                 By:    **Michael Carl Zellers, Esquire**

(Appearances continued on next page.)

*Reported By:*          *Sahar McVickar, RPR, CSR No. 12963*
                        *Official Reporter, U.S. District Court*
                        *For the Northern District of California*

            (Computerized Transcription By Eclipse)

```
1  Appearances, (cont'd.):

2  For Defendant:          O'Melveny & Myers, LLP
                           Two Embarcadero Center, 28th Floor
3                          San Francisco, California  94111
                    By:    Charles C. Lifland, Esquire
4                          Matt Powers Esquire

5

6                          ---o0o---

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Friday, September 10, 2010                          9:00 A.M.

 2                        P R O C E E D I N G S

 3            THE CLERK:  Calling civil 10-3886, Brigham versus --

 4   wait -- DePuy Ortho.

 5            I was thinking something else, but, okay.

 6            State your appearance, please.

 7            MR. TASCHNER:  Good afternoon, Your Honor, Dan

 8   attach for the plaintiff.

 9            THE COURT:  Good afternoon.

10            MR. CIRSCH:  Good afternoon.

11            Lee Cirsch, also on behalf of the plaintiff.

12            THE COURT:  Good afternoon.

13            MR. ZELLERS:  Good afternoon, Your Honor.

14            Michael Zellers on behalf of defendants.

15            THE COURT:  Good afternoon.

16            MR. LEFLAND:  Charles Lifland on behalf of

17   defendants.

18            MR. POWERS:  And good afternoon, Your Honor.

19            Matt Powers, also on behalf of the defense.

20            THE CLERK:  Counsel, if you are going to speak from

21   the table, could you make sure your mics are on?  I think the

22   red lights means on.  Tap on the mic.

23            THE COURT:  Well, I got a deal for you:  Why don't

24   they come to the podium and just address me there?

25            THE CLERK:  But they have all their stuff.
```

1      *THE COURT:* It will work.

2      *THE CLERK:* Okay.

3      *THE COURT:* This is plaintiff's motion --

4      application for a temporary restraining order, and I'm not

5      inclined to grant it, so...

6              Are you the plaintiff?

7      *MR. TASCHNER:* Yes.

8      *THE COURT:* I've read your papers, but if there is

9      anything you want to add.

10     *MR. TASCHNER:* There is.

11             Shall I come to the podium?

12     *THE COURT:* I think that would be better.  Thank

13     you.

14     *MR. TASCHNER:* Very grateful for your taking the

15     time, and defendants, also.

16             We prepared these papers eight days ago, and the

17     landscape has shifted.  And I've also reviewed defendant's

18     papers, so my comments are with regard to what they have

19     submitted.

20             We asked for, basically, a litigation hold on

21     communicating with potential class members when we submitted

22     this a week ago.  We have received their papers, and -- I'll go

23     directly to it:  In paragraph 18 of the affidavit or

24     declaration submitted by Mr. Cutshall, he states that they're

25     not only communicating with potential class plaintiffs, but

1   securing the actual devices themselves and sending them out to

2   unknown third parties to do some type of testing.  And in the

3   last 24 hours, we have received letters from our engaged

4   clients that they have received from their doctors asking them

5   to give the devices.

6           So, fortunately, they've asked us, and we have said

7   no.  But at a minimum today, we would like to get an order on

8   that.  So that's biggest fundamental change from the time that

9   we submitted the papers a week ago to today, is reading and

10  yesterday and today learning that our actual clients, and more

11  broadly, prospective class members, are being asked to turn

12  over their devices.  They are being tested by an unknown third

13  party.  We don't know if it's being recorded.  We don't know if

14  they are going to be preserved.

15          And from our experience in the 2001 Sulzer hip

16  implant case, the number of defendants grows very quickly.  In

17  that case, it was the residue lubricant that caused the device

18  to not hold on the bone.  So if there is testing done and that

19  lubricant's removed, we may not have a potential defendant, may

20  not be able to test it.  We would like to be able to film it,

21  participate in that process.

22          In a more global sense, what's happened in the last

23  eight days, when we filed our complaint -- this was assigned to

24  a magistrate judge, and shortly thereafter we filed a motion

25  with the MDL panel to coordinate all the cases in New Jersey

1  before a judge --

2          **THE COURT:**  Oh, so this case is likely to go to

3  New Jersey?

4          **MR. TASCHNER:**  No -- well, at that time it wasn't

5  assigned to Your Honor.  We didn't even have a judge at that

6  time.  We asked initially for a judge who had a similar case

7  because we thought that would help expedite the case, but the

8  briefing that's before Your Honor Your Honor and that will

9  likely come, you may no more about this case very quickly than

10  another judge.  I mention that because --

11          **THE COURT:**  Oh, well, I don't think you need to jump

12  to any such quick conclusions.

13          **MR. TASCHNER:**  Okay.  I just want to bring to the

14  Court's attention the landscape of where we are.

15          Also in the last eight days, we have been contacted

16  by over a dozen law firms, we are evaluating over a hundred

17  cases.  So the issue -- and I read this in their papers -- they

18  don't think this is going to be certified.  We would like to

19  get that keyed up as soon as possible; that would dispense with

20  a lot of these issues.

21          So we haven't had a chance to discuss any pre-trial

22  orders or any other issues, but from our perspective, this is a

23  ripe opportunity to address these other issues.  And from our

24  point of view, our biggest concern is the testing of those

25  devices.  And we are happy to engage in a discussion about

```
1   protocol with defendants, and so on, we just haven't had time.

2   And this is it is the first opportunity we've met.

3           THE COURT:  All right, thank you.

4           MR. ZELLERS:  Your Honor, Michael Zellers.

5           If plaintiff is now requesting new or different

6   relief with respect to a TRO, then we would request an

7   opportunity to respond.  We do believe, though, that any issue

8   with respect to obtaining the ex-planted devices, if, in fact,

9   those devices are sent to the testing lab, that that is very

10  similar to the medical records.

11          Our issue here is --

12          THE COURT:  Well, it's different because there is

13  physical evidence that could be altered or inadvertently

14  destroyed.  Even nonconstructive testing could inadvertently

15  involve soap and water, or something.

16          MR. ZELLERS:  The important thing, Your Honor, is

17  that these devices be preserved.  Right now, plaintiff's

18  counsel represents one plaintiff; there are many other as yet

19  unidentified patients that have this device.  To the extent

20  that these devices do, you know, become available, then it's

21  important that someone make sure that the devices are

22  preserved.

23          The recall protocol that the defendants have put

24  together, one element of that recall protocol is for the

25  ex-planted device to go to an independent laboratory.  There is
```

1   not to be any destructive testing.  "Testing" is really the

2   wrong word, it's an inspection of the device.  So there's no

3   testing that's done.  The device will be inspected.  It will be

4   analyzed.  It then will be preserved and be available, to the

5   extent in the course of litigation and discovery it needs to be

6   turned over.

7           The's testing that is done in terms of what's

8   written and the analysis will be available for treating

9   physicians.  To the extent that a treating physician requests

10  that the ex-planted device be returned, then it will be

11  returned.  And I can assure Your Honor that our client, DePuy,

12  understands the need to preserve this evidence in the course of

13  litigation.

14          I'd be glad --

15          *THE COURT:*  Have you spoken to one another about any

16  of these issues?

17          *MR. ZELLERS:*  We have not spoken about any

18  inspection protocol.

19          *THE COURT:*  Because that's one thing that plaintiff

20  pointed out this afternoon as being of concern to him, based on

21  the information that you have supplied in your papers.  And it

22  occurs to me that perhaps you could resolve that.  It doesn't

23  sound to me like a really hard issue to resolve.

24          I think plaintiff is right, and you just said it,

25  those things need to be preserved and preserved intact and

```
1    unaltered so that they can be inspected.  Surely, this has

2    happened before in the course of litigation in this country,

3    and you can probably figure out a way to do that.

4            So with respect to that particular issue, my

5    suggestion to you -- I'm here all afternoon -- is that you

6    speak to one another about that and see if you can resolve

7    something about that.

8            Now, did you -- did you want to add anything about

9    any of the other relief that you had previously requested?

10           MR. TASCHNER:  Yes, I would.

11           We do not object to notice going out.  And, in fact,

12   we applaud the defendant, because in Sulzer, they didn't have

13   protocol where people could get emergency funds for --

14           THE COURT:  If what are you about to say is that you

15   don't object to the balance of it, you can just tell me that.

16           MR. TASCHNER:  I would like, in addition to any

17   notice they are providing that their legal rights may be

18   impacted, ideally, I would like to have them list that there is

19   a lawsuit filed in which they may be involved.

20           But our client, and I can give you the letter, we

21   represent -- we are investigating a hundred of these, but one

22   who is not in a case now who is part of the prospective class

23   action gave us a letter this morning asking for those medical

24   records.  And he didn't realized that if he signed it he may be

25   impacting his illegal rights in some way.
```

1    **MR. ZELLERS:**  I can assure you, Your Honor, that

2    anyone who executes this authorization is not waving any legal

3    rights whatsoever.

4    **MR. TASCHNER:**  But it says they do on the face.  I

5    can read it if you like.  It says that "your federal privacy

6    rights may be impacted if you sign this."  That's in the top

7    paragraph of the release.

8    **THE COURT:**  Oh, like HIPAA.

9    **MR. ZELLERS:**  Right.

10   **THE COURT:**  And, of course, that's true because

11   HIPAA would say that you can't release it.

12   **MR. ZELLERS:**  My reference are as to any litigation

13   rights.  Absolutely no rights are waived by any patient who

14   executes the authorization.

15   **THE COURT:**  Well, let me tell you, then, what I'm

16   thinking, and perhaps we can get right to the bottom of this.

17       I was not persuaded by your papers that I should

18   interfere with the communications back and forth between your

19   prospective clients and their doctors.  I think they probably

20   need to know that these matters are subject to recall, or

21   subject to reinspection.  And I think -- so I'm not inclined to

22   interfere in any way with that.

23       It had been my understanding from the papers that I

24   read that no legal rights concerning releases, for example, of

25   liability, would be impacted by the things that defendant was

1   proposing to send out.  So I was prepared, on the face of it,

2   to just deny the motion and say we are going to go forward.  I

3   wasn't going to grant the spoliation motion because there is no

4   evidence of spoliation.

5          But I was going to expect to receive from you, and I

6   think I would receive from you a representation that you know

7   your responsibilities and litigation has been commenced and

8   that you will do what you have to do.  So that's kind of where

9   I started.

10         But what I think would be useful now -- and, as I

11   say, I'm here all afternoon, I have conferences, but I'm

12   here -- is for you folks to talk to each other and see if you

13   can come to an agreement concerning the devices themselves and

14   how some -- you may want to have a longer protocol on it later,

15   but for today's purposes, anyway, something about how those

16   things will be preserved so that plaintiffs aren't worried that

17   they've been altered or destroyed and you are not worried that

18   you can't test them in order to improve the product.

19         So why don't you go talk about that and let me know

20   when, if ever, you want to talk to me again about that, okay?

21         *MR. ZELLERS:*  Will do.

22         *MR. TASCHNER:*  Okay.

23         *THE COURT:*  As I say, I'm here.  There is an

24   attorney conference room next door, if you want to use that.

25   It's small and has no windows.  On the 18th floor, there is the

```
1    attorney's lounge, which is sumptuous and does have windows.
2    And you can go there, if you like.
3                Just let me know if you want to talk to me again
4    today.
5                MR. ZELLERS:  Thank you, Your Honor.
6                MR. TASCHNER:  Thank you, Your Honor.
7                        (Proceedings recess for conferring between
8                        the parties/reconvene at 3:42 p.m.:)
9                THE CLERK:  Calling civil 10-3886, Brigham versus
10   DePuy.
11               THE COURT:  Was there something you wanted to put on
12   the record?
13               MR. TASCHNER:  Yes, Your Honor.
14               THE COURT:  Oh, good.
15               MR. ZELLERS:  Your Honor, it is Michael Zellers for
16   the defendant.
17               It is our understanding that no devices have been
18   returned or inspected since the recall.
19               Before anything is done with a recall device, DePuy
20   will prepare a description of the process of inspection,
21   including a planned start date, which will not be less than 15
22   days from the time the description is provided to Mr. Brigham's
23   counsel.
24               THE COURT:  And that is satisfactory to you?
25               MR. TASCHNER:  That is satisfactory.
```

1          *THE COURT:*  Okay.

2          *MR. TASCHNER:*  We agree to that.

3          The only thing we would ask of the Court is to

4    approve that.  And it's our understanding that in that 15-day

5    window, if we are not going to be invited to observe, or

6    something, or whatever the protocol is they have, that we'll

7    have adequate time to come to Your Honor to ask to participate

8    for whatever relief may be warranted.

9          *THE COURT:*  That's the reason for the window?

10         *MR. ZELLERS:*  Yes.

11         *THE COURT:*  I think that makes perfectly good sense.

12   And I am pleased you were able to do that.

13         What do you want to do with this, do you want to

14   memorialize this in a document that you will file?  Want to

15   just have the court reporter's transcript of it be the

16   agreement?

17         *MR. TASCHNER:*  We didn't discuss that.  We would

18   prefer to have it memorialized, just so we are absolutely sure

19   we have 15 days, and more critically, if we don't have an

20   agreement that we have adequate time to come brief what we

21   would like to have occur if it's not included in whatever they

22   propose.

23         *MR. ZELLERS:*  Your Honor, we believe our

24   representation on the record and before you is sufficient, you

25   know, on this issue.

14

```
 1                THE COURT:  Well, I'm going to order you to do what
 2   you just said you would do.  And your representation is
 3   sufficient for me.  And I'm ordering you to do it based on
 4   that.  But since it's an order, it might be good to get a piece
 5   of paper that represents exactly what the order was.  So I
 6   don't care if you wanted to just order a transcript from Sahar
 7   and use the transcript with counsel's statement, and then I'll
 8   just so order it.  That would be fine.
 9                MR. TASCHNER:  That's fine.
10                THE COURT:  Or if you want to, just draft something
11   up and submit it to me.  Either way would work for me.
12                MR. ZELLERS:  Your Honor, we believe we can just use
13   the statement from the court reporter.
14                THE COURT:  Okay.
15                MR. TASCHNER:  That's acceptable.  Thank you.
16                THE COURT:  All right, so somebody needs to get it,
17   then.  And once it's gotten, I'll just put a cover sheet on it
18   that says "so ordered"; how is that?
19                MR. ZELLERS:  That sounds fine, Your Honor.  And
20   then it's our understanding that with this representation that
21   today's motion is denied?
22                THE COURT:  Correct.
23                MR. ZELLERS:  Thank you, Your Honor.
24                THE COURT:  Thank you.
25                MR. TASCHNER:  Thank you, Your Honor.
```

15

```
 1              THE COURT:  You're welcome.

 2                  (Proceedings adjourned at 3:48 p.m.)

 3

 4                      ---oOo---

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF REPORTER

        I, Sahar McVickar, Official Court Reporter for the
United States Court, Northern District of California, hereby
certify that the foregoing proceedings were reported by me, a
certified shorthand reporter, and were thereafter transcribed
under my direction into typewriting; that the foregoing is a
full, complete and true record of said proceedings as bound by
me at the time of filing.  The validity of the reporter's
certification of said transcript may be void upon disassembly
and/or removal from the court file.


                    /s/ Sahar McVickar
            _____
            Sahar McVickar, RPR, CSR No. 12963
                Friday, September 17, 2010